**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cr-60158-BLOOM**

UNITED STATES OF AMERICA,

Plaintiff,

v.

JACOB ANDREW SCHILLER,

Defendant.
_______________________________/

## ORDER ON DEFENDANT'S MOTION TO DISMISS INDICTMENT

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss Indictment, ECF No. [63] ("Motion"). The Government filed a Response, ECF No. [70], to which Defendant filed a Reply, ECF No. [73]. Defendant filed Notices of Supplemental Authority, ECF Nos. [74], [75], [77]; and the Government filed Notices of Supplemental Authority, ECF Nos. [76], [80]. The Court has reviewed the Motion, the supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is denied.

### I. BACKGROUND

The June 11, 2026 Indictment against Defendant alleges one count of possession of four unregistered firearms in violation of 26 U.S.C. § 5861(d). ECF No. [3]. The Indictment alleges that "[o]n or about October 3, 2024," Defendant "did knowingly possess a firearm . . . which was not registered to him in the National Firearms Registration and Transfer Record . . . in violation of [§ 5861(d) and 5871]." *Id.* The Indictment specifies each of the four firearms as "a rifle having a barrel of less than 16 inches in length[.]" *Id.*

Defendant moves to dismiss the Indictment, arguing that 26 U.S.C. § 5861(d) became unconstitutional on January 1, 2026, when the One Big Beautiful Bill Act's ("OBBBA") provision

to collect $0 in taxes for short-barreled rifles ("SBRs") went into effect. ECF No. [63]. The Government responds that even if OBBBA did render § 5861(d) unconstitutional, the federal savings clause applies to permit the prosecution of conduct that occurred prior to OBBBA's effective date. ECF No. [70].[1]

## II. LEGAL STANDARD

An indictment is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). For an indictment to be valid, it must "(1) present[ ] the essential elements of the charged offense, (2) notif[y] the accused of the charges to be defended against, and (3) enable[ ] the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Schmitz*, 634 F.3d 1247, 1259 (11th Cir. 2011) (quoting *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009)).

A defendant may challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, constitutional reasons, double jeopardy, improper composition of the grand jury, and certain types of prosecutorial misconduct. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012); Fed. R. Crim. P. 12(b). On a motion to dismiss the indictment, "[t]he indictment's allegations are assumed to be true and are viewed in the light most favorable to the government." *United States v. Rodriguez*, 635 F. Supp. 3d 1351, 1354-55 (S.D. Fla. 2022). "[A] court ruling on a motion to dismiss may not look beyond the four corners of the indictment, nor may it properly dismiss an indictment for insufficient evidence." *United States v. Baxter*, 579 F. App'x 703, 706 (11th Cir. 2014). Fundamentally, Federal Rule of Criminal Procedure 12(b) allows

[1] On October 20, 2026, the Government filed a Response to Defendant's Second Notice of Supplemental Authority. ECF No. [80]. The Government "no longer asserts its arguments under the Commerce Clause, Necessary and Proper Clause, and special occupational tax—instead, only advances its savings clause position." *Id.*

a Defendant to move to dismiss an indictment where the indictment is insufficient as a matter of law. *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) (citing *United States v. Korn*, 557 F.2d 1089, 1090–91 (5th Cir. 1977) and *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (5th Cir. 1978)).

## III. DISCUSSION

### A. The Statutory Framework

#### 1. The National Firearms Act ("NFA")

The National Firearms Act ("NFA"), enacted in 1934, "creates a comprehensive taxation and registration scheme for certain statutorily defined 'firearm[s].'"[2] *United States v. Bolatete*, 977 F.3d 1022, 1031 (11th Cir. 2020). As it relates to this case, the NFA includes in its definition of firearms, "a rifle having a barrel or barrels of less than 16 inches in length[.]" 26 U.S.C. § 5845(a)(3). "[T]he NFA requires that all covered firearms (except those belonging to the United States) be registered in the National Firearms Registration and Transfer Record, a central registry maintained by [the Bureau of Alcohol, Tobacco, and Firearms ("ATF")]. *Silencer Shop Found. v. Bureau of Alcohol*, No. 6:25-CV-056-H, 2026 WL 2255460, at *3 (N.D. Tex. Aug. 5, 2026). The NFA also "requires that any person who transfers a firearm to someone else must pay a $200 transfer tax and must register the firearm to the transferee. It is the transferor, not the transferee, who is obligated to pay the tax and to register the firearm." *Bolatete*, 977 F.3d at 1031 (citing 26 U.S.C. §§ 5811, 5841, 5841.1). To enforce that tax, Congress created criminal offenses, including § 5861(d), which makes it unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). The "penalty imposed on transferees ultimately discourages the transferor on whom the tax is

[2] Under the NFA, "firearm" is a defined term that differs from the colloquial use of the term.

levied from transferring a firearm without paying the tax." *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972). And the statutory restrictions "have teeth: Failure to comply with the requirements of the NFA . . . carries severe consequences." *Mock v. Garland*, 75 F.4th 563, 570 (5th Cir. 2023). Maximum penalties under the NFA include a fine of $10,000 and/or imprisonment of ten years. 26 U.S.C. § 5871.

The Eleventh Circuit has upheld § 5861(d)'s constitutionality "as an exercise of Congress' taxing power." *Bolatete*, 977 F.3d at 1034 (citing *United States v. Spoerke*, 568 F.3d 1236, 1245–46 (11th Cir. 2009)). "Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons." *Spoerke*, 568 F.3d at 1245 (quoting *Ross*, 458 F.2d at 1145). "Section 5861(d) . . . is part of the web of regulation aiding enforcement of the transfer tax provision in § 5811." *Ross*, 458 F.2d at 1145.

**2. One Big Beautiful Bill Act ("OBBBA")**

On July 4, 2025, Congress passed and the President signed the One Big Beautiful Bill Act ("OBBBA"). The OBBBA amended the NFA, eliminating the $200 transfer and making tax for firearms, excluding machineguns and destructive devices. *See OBBBA*, Pub L. No. 119-21, 139 Stat. 72, 247–48 (2025). Accordingly, the NFA now provides that a $0 tax shall be levied, collected, and paid on firearms transferred or made that are not machineguns or destructive devices. 26 U.S.C. §§ 5811(a)(2) (transfer); 5821(a)(2) (making). The OBBBA did not change the tax for machineguns and destructive devices or the special occupational tax for importers, manufacturers, and dealers of firearms regulated under the NFA. *See Silencer Shop*, 2026 WL 2255460, at *4. Combining the NFA's specific definition of firearm with the OBBBA's provisions, the OBBBA "amended the NFA to eliminate the transfer and making taxes on short-barreled shotguns, short-barreled rifles, silencers, and [any other weapon[s] ('AOWs')]." *Id.*

**3. *Silencer Shop Foundation***

In *Silencer Shop Foundation v. Bureau of Alcohol*, No. 6:25-CV-056-H, 2026 WL 2255460 (N.D. Tex Aug. 5, 2026), the court found that the OBBBA rendered certain provisions of the NFA unconstitutional. The plaintiffs, "a coalition of individuals, businesses, associations, and states," brought two civil claims against the U.S. Department of Justice, the Acting Attorney General, the ATF, and the Director of the ATF, and argued that the NFA's regulatory requirements exceed Congress's Article I enumerated powers and violate the Second Amendment. *Id.* at *5. The plaintiffs sought a universal injunction preventing the defendants from implementing or enforcing the NFA's regulatory requirements for any untaxed firearms, not restricted to those firearms transferred by parties to the case. *Id.*[3] The court held:

> In 1934, Congress invoked its taxing power to enact the National Firearms Act — a scheme to constrict the market for certain classes of firearms. As passed, the NFA required individuals to pay a tax before transferring or making a covered firearm. And it included burdensome regulatory provisions to aid the collection and enforcement of those taxes. At that time, the NFA possessed the key feature of any tax: It produced some revenue for the government.
>
> But that is no longer true. In 2025, Congress eliminated the NFA's transfer and making taxes for four categories of firearms: short-barreled shotguns, short-barreled rifles, silencers, and a final, defined group of miscellaneous firearms. Because today's NFA does not generate any revenue from untaxed firearms, its regulatory provisions cannot be upheld under the taxing power. And there is no sign in the NFA's text, structure, or statutory history that Congress invoked any other power in crafting the NFA provisions at issue. Thus, the regulatory provisions must be enjoined as unconstitutional because they exceed Congress's enumerated powers.

*Silencer Shop*, 2026 WL 2255460, at *1. In holding that the NFA's regulation of certain classes of firearms is now unconstitutional, the district court ordered a permanent injunction, prohibiting the

[3] *Silencer Shop* is consolidated with another case, *Jensen v. ATF*, No. 6:26-CV-227, which raised the same claims and made the same arguments but requested narrower relief related to the NFA's application to silencers and short-barreled rifles. *Silencer Shop*, 2026 WL 2255460, at *5.

defendants from enforcing the challenged NFA provisions against the plaintiffs and those closely associated with plaintiffs. *Id.* at *26–28. The district court denied issuing a universal injunction. *Id.* (citing *Trump v. CASA*, 606 U.S. 831, 841–47 (2025)). The government determined not to file an appeal in that case. *See* ECF No. [74].[4]

Following the decision in *Silencer Shop*, the ATF distributed an open letter:

> [E]ffective October 9, 2026, ATF will no longer require individuals to seek ATF approval under the NFA before making or transferring short-barreled rifles, short-barreled shotguns, silencers, and 'any other weapon[s]' as defined in 26 U.S.C. § 5845(e). ATF will also no longer require such items to be registered in the National Firearms Registration and Transfer Record. These policies apply uniformly to anyone otherwise subject to these requirements . . . .

ECF No. [75-1].

Here, the Government "acknowledges the ATF's open policy letter and decision not to appeal *Silencer Shop*." ECF No. [80]. Accordingly, the Government "no longer asserts its arguments under the Commerce Clause, Necessary and Proper Clause, and special occupational tax—instead, only advances its savings clause position." *Id.* at 1.[5] As such, the Court assumes without deciding that the OBBBA's amendment to reduce the tax to $0 for short-barreled rifles renders § 5861(d) unconstitutional and analyzes whether dismissal of the Indictment is proper.

---

[4] Defendant states that the government's decision not to file an appeal "conceded that *Silencer Shop* was correctly decided," which overstates the government's representation in the Section-530D letter. *See* ECF No. [74]. On September 24, 2026, the Department of Justice Office of the Solicitor General sent a letter to Senator Charles Grassley, which states, "the Department of Justice has determined not to file an appeal in [*Silencer Shop*]," and then summarizes the findings and holding in *Silencer Shop. See* ECF No. [74-1].

[5] The Government's Response argued that the OBBBA does not render § 5861(d) unconstitutional because the NFA continues to generate revenue, maintaining the NFA's criminal penalties as a valid exercise of Congress's taxing power. ECF No. [70] at 11. Even if § 5861(d) is no longer supported by Congress's taxing power, the Government argued § 5861(d) is constitutional via the Commerce Clause and/or the Necessary and Proper Clause. *Id.* at 16.

**B. Post-OBBBA Prosecution of § 5861(d)**

Defendant argues that because the OBBBA rendered § 5861(d) unconstitutional as of January 1, 2026, the prosecution, as applied to Defendant's alleged possession of SBRs, is unconstitutional and the Indictment must be dismissed. ECF No. [63] at 18. Defendant contends the Government cannot continue its prosecution against him when the Government now lacks the constitutional power to prosecute § 5861(d). *Id.* at 19.

The Government responds that, assuming *arguendo* that the OBBBA's zeroed-out tax amendment effectively repeals § 5861(d), the OBBBA did not otherwise release or extinguish criminal liability for conduct that occurred before January 1, 2026. ECF No. [70] at 7.

**1. *U.S. v. Chambers***

Defendant relies on *U.S. v. Chambers*, 291 U.S. 217 (1934), to argue that indictments must be dismissed when the constitutional authority underlying the indictment ceases to exist. *Chambers* involved two defendants indicted for violations of the National Prohibition Act. 291 U.S. at 221–22. The Court dismissed the indictments, which were filed prior to the repeal of the Eighteenth Amendment,[6] and ruled:

> Upon the ratification of the Twenty-First Amendment, the Eighteenth Amendment at once became inoperative. Neither the Congress nor the courts could give it continued vitality. The National Prohibition Act, to the extent that its provisions rested upon the grant of authority to the Congress by the Eighteenth Amendment, immediately fell with the withdrawal by the people of the essential constitutional support. The continuance of the prosecution of the defendants after the repeal of the Eighteenth Amendment, for a violation of the National Prohibition Act . . . would involve an attempt to continue the application of the statutory provisions after they had been deprived of force. []
>
> *This consequence is not altered by the fact that the crimes in question were alleged to have been committed while the National Prohibition Act was in effect.* The

[6] The Supreme Court took judicial notice that the Twenty-First Amendment was ratified—and the Eighteenth Amendment was appealed—on December 5, 1933. The defendants were indicted on June 5, 1933. *Chambers*, 291 U.S. at 221–22.

> continued prosecution necessarily depended upon the continued life of the statute which the prosecution seeks to apply. In case a statute is repealed or rendered inoperative, no further proceedings can be had to enforce it in pending prosecutions unless competent authority has kept the statute alive for that purpose.

*Id.* at 222–23 (emphasis added).

Assuming without deciding that OBBBA rendered § 5861(d) unconstitutional as of January 1, 2026, *Chambers* instructs this Court to dismiss the Indictment because the charged statute, § 5861(d), is no longer constitutional and pending prosecutions cannot continue when the underlying statute has been deprived of force. However, this conclusion does not end the Court's inquiry. Even though *Chambers* applies to conduct that occurred prior to a statute's constitutional invalidity, the Government argues the general savings clause applies to preserve prosecutions of criminal conduct that occurred prior to the OBBBA's effective date.

**2. Application of the General Savings Clause**

The Government argues the general savings clause bars retroactive application of a statute's repeal or amendment unless Congress expressly provides that such repeal or amendment is to be applied retroactively. ECF No. [70] at 7–8. If Congress does not address retroactivity or clearly indicates a contrary intent, courts are required to assume that Congress did not intend retroactivity. *Id.* Nothing in the OBBBA expressly releases liabilities or penalties incurred before January 1, 2026, and neither Defendant nor the parties in *Silencer Shop* have indicated any hint that Congress intended retroactive application. *Id.* Because Congress is silent on retroactivity, the Government contends Congress intended the OBBBA to apply prospectively and the savings clause applies such that Defendant remains subject to criminal liability for his conduct prior to the OBBBA's effective date. *Id.*

Defendant replies that the savings clause is inapplicable and cannot be used to circumvent an indictment's constitutional defect. ECF No. [73] at 9. Defendant acknowledges that the

OBBBA's amendment to §§ 5811(a)(1) and 5821(a)(1) was a supervening change in law. *Id.* But that change in law removed the constitutional support upon which the separate criminal prohibition in § 5861(d) depended for its constitutional validity. *Id.* at 11. Defendant argues that the savings clause does not apply because § 5861(d) does not include as an element the failure to pay the applicable tax, so the OBBBA did not in any way repeal or amend § 5861(d) nor any of its elements. *Id.* Because the savings clause does not apply, the common-law presumption controls, and the Court must apply the law as it currently stands. *Id.* Additionally, Defendant argues the holding in *Chambers* applies to Defendant's prosecution, and the source of § 5861(d)'s constitutional infirmity, whether by an act of Congress or by constitutional amendment, is irrelevant. *Id.* at 14.

It is a general principle that "[t]here can be no legal conviction, nor any valid judgment pronounced upon conviction, unless the law creating the offence be at the time in existence." *United States v. Tynen*, 78 U.S. 88, 95 (1870). In 1871, "Congress enacted its first general saving provision . . . to abolish the common-law presumption that the repeal of a criminal statute resulted in the abatement of 'all prosecutions which had not reached final disposition in the highest court authorized to review them.'" *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 660 (1974) (citing *Bradley v. United States*, 410 U.S. 605, 607 (1973)). Known as the general savings clause, the current savings clause states:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109.

The Supreme Court has held that § 109 "provides that a new criminal statute that 'repeal[s]' an older criminal statute shall not change the penalties 'incurred' under that older statute 'unless the repealing Act shall so expressly provide.'" *Dorsey v. United States*, 567 U.S. 260, 272–73 (2012) (citing 1 U.S.C. § 109). "[T]he word 'repeal' applies when a new statute simply diminishes the penalties that the older statute set forth[ . . . ,] and penalties are 'incurred' under the older statute when an offender becomes subject to them, *i.e.,* commits the underlying conduct that makes the offender liable." *Id.* (internal citations omitted).

Section 109 gives effect to a "presumption against retroactive legislation," which "is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). The Supreme Court has explained, "Ordinarily, because judges impose sentences based on the statutory penalties that exist at the time defendants commit their offenses, statutory changes to federal penalties only benefit *future* offenders." *Hewitt v. United States*, 606 U.S. 419, 424 (2025) (citing 1 U.S.C. §109) (emphasis in original). Retroactive application of a statute requires a clear indication that Congress intended the statute to apply retroactively. *See Lindh v. Murphy*, 521 U.S. 320, 325–26 (1997) (summarizing that *Landgraf* requires "express commands," "unambiguous directives," and "clear intent," to "rebut the presumption" against retroactive application (citing *Landgraf*, 511 U.S. at 263, 272, 280, 286)) (alterations adopted).

Here, the Indictment charges Defendant with the possession of unregistered SBRs on October 3, 2024. Defendant has not identified any language in the OBBBA to suggest that the amendment of § 5811 applies retroactively. *See generally* ECF Nos. [63], [73], [74], [75], [77]. Because criminal liability is incurred when the underlying conduct is committed, Defendant

incurred liability in October 2024, prior to the OBBBA's January 1, 2026, effective date.[7] Absent any indication that Congress intended that its amendment apply retroactively, the Court applies the law at the time Defendant allegedly committed the offenses. In this case, the Court applies the law in place on October 3, 2024, when § 5861(d) was undisputably constitutional.

Defendant's argument that the savings clause does not apply because the OBBBA did not "repeal" the statute giving rise to Defendant's criminal liability is unpersuasive. Defendant asks this Court to adopt a narrow, plain-text reading of § 109 to argue that the savings clause is inapplicable because the OBBBA amended the tax provisions of the NFA, §§ 5811 and 5821, and did not amend or repeal the statute giving rise to Defendant's alleged criminal liability, § 5861(d). Defendant argues the OBBBA "rendered [§] 5861(d) inoperative, but it neither repealed, amended, nor modified [§ 5861(d)]." *See* ECF No. [73] at 12.

A plain reading does not support Defendant's distinction between "repeal" and "render inoperative," and Defendant does not point to any authority to support such a distinction. Defendant acknowledges that the common law presumption was that all prosecutions must abate when a statute has been *repealed or otherwise rendered inoperative*, *see* ECF No. [73] at 10 (emphasis added). The savings clause was adopted to "abolish" that presumption absent clear indication of intent from Congress. Congress enacted the OBBBA which expressly amends § 5811. *See OBBBA*, Pub L. No. 119-21, 139 Stat. 72, 247–48 ("Section 5811(a) is amended to read as follows . . . ").[8] As the Court assumes for purposes of this Motion, that amendment removed the

---

[7] Defendant points out the Government's twenty-month delay to indict Defendant because the June 11, 2026 Indictment was filed twenty-months after the alleged October 2024 conduct and six months after the OBBBA's effective date. ECF No. [73] at 1. However, the date the Indictment was filed is not relevant because criminal liability is incurred when the conduct is committed, not when the Indictment was filed.

[8] In addition to repeals, § 109 applies to amendments and re-enactments. *See, e.g.*, *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 660 (1974) (explaining the general savings clause applies to "repeals and re-enactments with different penalties"); *Martin v. U.S.*, 989 F.2d 271, 274 (8th Cir. 1993) (holding

constitutional authority behind § 5861(d). The OBBBA did not expressly repeal § 5861(d), nor did it indicate an intent to amend criminal penalties under the NFA, yet the OBBBA amended the NFA such that § 5861(d) is effectively rendered inoperative. Retroactive application of a repealed or inoperative statute when there is no indication that was Congress's intent is precisely the situation § 109 was enacted to prevent.

Defendant's argument that the savings clause does not apply regardless of the source behind the statute's unconstitutionality is similarly unconvincing. Contrary to Defendant's assertion, the source of § 5861(d)'s constitutional infirmity is not irrelevant — at least not to the application of the savings clause. The Supreme Court in *Chambers* held that the savings clause did not apply because the National Prohibition Act became unconstitutional via a constitutional amendment, not an act of Congress. *Id.* at 224. The Supreme Court explained:

> [The savings] provision applies, and could only apply, to the repeal of statutes by the Congress and to the exercise by the Congress of its undoubted authority to qualify its repeal and thus to keep in force its own enactments. . . . The National Prohibition Act was not repealed by act of Congress, but was rendered inoperative, so far as authority to enact its provisions was derived from the Eighteenth Amendment, by the repeal, not by the Congress but by the people, of that amendment. The Twenty-First Amendment gave to the Congress no power to extend the operation of those provisions. We are of the opinion that in such a case the statutory provision relating to the repeal of statutes by the Congress has no application.

*Id.* at 224.

*Chambers* expressly ruled that Congress's savings clause does not apply to repeals through a constitutional amendment. As such, where the NFA was amended by a Congressional act, *Chambers* does not apply. Other courts have reached the same conclusion. Since passage of the OBBBA, courts have applied the savings clause to pre-enactment prosecutions under §5861(d). A

---

"the general savings clause applies to both [a repeal and an amendment]."); *United States v. Breier*, 813 F.2d 212, 215 (9th Cir. 1987) (same); *United States v. Stillwell*, 854 F.2d 1045, 1048 (7th Cir. 1988) (same).

district court ruled that the OBBBA's SBR tax reduction "is not relevant" to defendant's motion to dismiss his 2023 indictment for possession of an unregistered short-barreled shotgun in violation of § 5861(d), noting that the "[OBBBA's] tax reduction was not retroactive." *See United States v. Rojas*, No. 4:23-CR-222-CLM-JHE-1, 2025 WL 4631820, at *11 (N.D. Ala. Dec. 9, 2025), *report and recommendation adopted*, No. 4:23-CR-222-CLM-JHE, 2026 WL 84221 (N.D. Ala. Jan. 12, 2026). The Second Circuit similarly applied the savings clause to conclude that a defendant's 2025 conviction under § 5861(d) remains constitutional because the OBBBA amendment was not retroactive. *See United States v. DeFelice*, No. 25-920-CR, 2026 WL 2588603, at *2–3 (2d Cir. Sept. 2, 2026) ("Assuming without deciding that the amendment repealed the original NFA statute of conviction in this case, 'the federal saving statute [nevertheless] preserves the original penalties in effect when [DeFelice] committed the offense' where, as here, Congress did not make the amendment retroactive." (citing 1 U.S.C. § 109)) (other citation omitted).

As Defendant acknowledges, it is not clear whether Congress's passage of the OBBBA intended to undermine the constitutional underpinning of § 5861(d). Without indication of *any* intent, much less clear intent, that Congress intended the SBR tax reduction to retroactively vitiate criminal liability for conduct prior to the OBBBA's enactment, the Court applies the deeply rooted presumption against retroactive legislation. Accordingly, the Court applies the statutory penalties that exist at the time Defendant allegedly committed the offenses. Where Defendant is charged with possession of unregistered SBRs in October 2024, Defendant's Motion to Dismiss the Indictment based on the argument that § 5861(d) is unconstitutional as of January 1, 2026, is denied.

**C. Second Amendment Challenge**

Defendant preserves for appellate review the argument that § 5861(d) as applied to him constitutes an unconstitutional restriction on his Second Amendment rights. ECF No. [63] at 19. Applying *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), Defendant argues that § 5861(d)'s restrictions on unregistered SBR possession is presumptively unconstitutional. *Id.* at 19–20.

The Government responds that prior Supreme Court precedent does not guarantee the right to possess short-barreled shotguns, which applies equally to SBRs, and many district and appellate courts also hold that the Second Amendment does not guarantee the right to possess firearms regulated under the NFA. ECF No. [70] at 18.

This Court has previously rejected a constitutional challenge of § 5861(d) as applied to short-barreled rifles. *See United States v. Sinclair*, No. 25-cr-20024-BLOOM, 2026 WL 1169894, at *5–6 (S.D. Fla. Apr. 30, 2026). Because Defendant raises the Second Amendment arguments to preserve for appellate review, the Court does not reiterate its holding in *Sinclair* and adopts and incorporates its reasoning in full and denies Defendant's Motion to Dismiss on Second Amendment grounds.

**IV. CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Indictment, **ECF No. [63]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 23, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record